UNION PACIFIC RAILWAY COMPANY V. JOHN PETER MERTES.

FILED FEBRUARY 20, 1894.    No. 4651.

1. **Contributory Negligence.** Although a party may have negligently exposed himself to an injury, yet if the defendant, after discovering his exposed situation, inflicts the injury upon him through a failure to exercise ordinary care, the plaintiff may recover damages. (Reaffirming fourth paragraph of the syllabus in *Union P. R. Co. v. Mertes*, 35 Neb., 204.) Where there is in such a case no evidence of a failure by the defendant to exercise ordinary care a recovery of damages cannot be sustained.

2. ———: EVIDENCE. The evidence examined as to this charge of negligence, and found insufficient to justify the submission of that question to the jury.

REHEARING of case reported in 35 Neb., 204.

*J. M. Thurston, W. R. Kelly, E. P. Smith,* and *John Schomp,* for plaintiff in error:

The plaintiff below was guilty of contributory negligence. There was no evidence to show any failure on the part of the company to do its whole duty. There was therefore no question of negligence on the part of the company to submit to the jury, and the motion to direct a verdict for defendant below should have been sustained. (*Apsey v. Detroit, L. & N. R. Co.,* 47 N. W. Rep. [Mich.], 513; *Hamilton v. Delaware, L. & W. R. Co.,* 50 N. J. Law,

263; *International & G. N. R. Co. v. Graves*, 59 Tex.,
331 ; Beach, Contributory Negligence, pp. 19, 20; *Chicago,
R. I. & P. R. Co. v. Houston*, 95 U. S., 697; *Cincinnati,
H. & I. R. Co. v. Butler*, 2 N. E. Rep. [Ind.], 138; *Payne
v. Western & A. R. Co.*, 13 Lea [Tenn.], 522; *Schaefert v.
Chicago, M. & St. P. R. Co.*, 62 Ia., 624; *Henzie v. St.
Louis, K. C. & N. R. Co.*, 71 Mo., 636; *Pennsylvania R.
Co. v. Beale*, 73 Pa. St., 504; *Haas v. Grand Rapids & I.
R. Co.*, 47 Mich., 401; *Tucker v. Duncan*, 9 Fed. Rep.,
867; *Union P. R. Co. v. Adams*, 33 Kan., 427; *Reading
& C. R. Co. v. Ritchie*, 102 Pa. St., 425; *Cogswell v. Ore-
gon & C. R. Co.*, 6 Ore., 417; *State v. Baltimore & O. R.
Co.*, 69 Md., 494; *Mynning v. Detroit, L. & N. R. Co.*,
64 Mich., 93; *Seefeld v. Chicago, M. & St. P. R. Co.*, 70
Wis., 216; *O'Connor v. Missouri P. R. Co.*, 94 Mo., 150;
*Moebus v. Herrmann*, 108 N. Y., 349; *Louisville, N. A. &
C. R. Co. v. Phillips*, 112 Ind., 59; *Pennsylvania R. Co. v.
Bell*, 122 Pa. St., 58; *Guggenheim v. Lake Shore & M. S.
R. Co.*, 66 Mich., 151; *Norfolk & W. R. Co. v. Burge*, 84
Va., 63; *Chicago & E. I. R. Co. v. Hedges*, 118 Ind., 5;
*Candelaria v. Atchison, T. & S. F. R. Co.*, 27 Pac. Rep. [N.
M.], 497; *McAdoo v. Richmond & D. R. Co.*, 11 S. E. Rep.
[N. Car.], 316; *Tennis v. Interstate C. R. T. R. Co.*, 25
Pac. Rep. [Kan.], 876; *Norfolk & W. R. Co. v. Carper*,
14 S. E. Rep. [Va.], 328; *Spicer v. Chesapeake & O. R.
Co.*, 11 L. R. A. [W. Va.], 385; *Union P. R. Co. v.
Adams*, 33 Kan., 427; *Baltimore & O. R. Co. v. State*, 16
Atl. Rep. [Md.], 212; *Wright v. Boston & M. R. Co.*, 129
Mass., 440; *Illinois C. R. Co. v. Godfrey*, 71 Ill., 500;
*Telfer v. Northern R. Co.*, 30 N. J. Law, 188; *Schofield v.
Chicago, M. & St. P. R. Co.*, 8 Fed. Rep., 488; *Wright v.
Boston & A. R. Co.*, 142 Mass., 296.)

*Mahoney, Minahan & Smyth* and *H. B. Holsman, contra:*

Although the plaintiff has carelessly exposed himself to
an injury, yet if the defendant, after discovering his ex-

posed condition, inflict the injury upon him through a
failure to exercise ordinary care, the plaintiff may recover
damages. (2 Thompson, Negligence, 1157; *Barker v. Savage*, 45 N. Y., 191; *Brown v. Lynn*, 31 Pa. St., 510;
*Northern C. R. Co. v. Price*, 29 Md., 420; *Locke v. First
Div. St. Paul & P. R. Co.*, 15 Minn., 350; *Nelson v. Atlantic & P. R. Co.*, 68 Mo., 593; *O'Keefe v. Chicago, R.
I. & P. R. Co.*, 32 Ia., 467; *Morris v. Chicago, B. & Q.
R. Co.*, 45 Ia., 29; *Lannen v. Albany Gas-Light Co.*, 44 N.
Y., 459; *McKean v. Burlington, C. R. & N. R. Co.*, 55
Ia., 192; *Brown v. Hannibal & St. J. R. Co.*, 50 Mo.,
461; *Omaha Horse Railway Co. v. Doolittle*, 7 Neb., 481;
*Burnett v. Burlington & M. R. R. Co.*, 16 Neb., 332; *Cook
v. Pickrel*, 20 Neb., 433; *Union P. R. Co. v. Sue*, 25 Neb.,
772.)

RYAN, C.

The opinion originally filed in this case was reported in
35 Nebraska on pages 204 *et seq.* A rehearing was granted,
and upon full argument we have reached the conclusions
which will now be briefly stated. To this end, it is not
necessary to review or criticise the syllabus or opinion already referred to. For the purposes of this re-examination
they will be assumed to be correct statements of the law
applicable to the facts, and the synopsis of the pleadings,
proofs, and established facts will be assumed to be correctly
stated, except in so far as otherwise hereinafter pointed out.
The fourth paragraph of the syllabus states correctly a
principle applicable to our inquiries. It was in the following language: "Although a party may have negligently
exposed himself to an injury, yet if the defendants, after
discovering his exposed situation, inflicts the injury upon
him through a failure to exercise ordinary care, the plaintiff may recover damages." At almost the close of the
opinion the principle just stated is given the following application: "Even if it be conceded that the plaintiff below

was unlawfully on the track and did not look for an en-
gine before crossing the same, still there is testimony in
the record from which the jury would be warranted in
finding that after the engineer became aware of the peril-
ous situation of the plaintiff below, he could, by the exer-
cise of ordinary care, have stopped the engine."

Neither in the briefs nor in the oral argument of counsel
has evidence been pointed out which justifies this last state-
ment.    It is insisted by counsel for defendant in error that
while there were two railroad lines admitting of trains
passing each other at the point where Mertes was injured,
yet that it was fairly inferable from the evidence of Mertes
himself that he was upon that particular line over which
the engine which injured him was advancing.    The evi-
dence of three other witnesses, who were upon the engine,
was directly contradictory of this location of Mertes, as it
is claimed his evidence justified the jury's above inference
in respect thereto.    Mertes seems to have been rather awk-
ward in the use of the English language, it is true, and,
therefore, in some parts of his evidence left uncertain just
where he was just previous to the collision with him.    He
said that he was walking "between the tracks" which were
"two or three yards apart."    After this he said he walked
"between the railroad."    The most that should be claimed
by plaintiff in error is that such expressions as "between
the railroad" and "between the tracks" were ambiguous.
This ambiguity is removed, however, by the statement of
Mr. Mertes that these tracks were two or three yards apart.
If this was left in any doubt it should have been entirely
removed by the further testimony of Mertes that he was
walking between the track where the east-bound train and
the west-bound train ran.    It must, therefore, be accepted
as an unquestioned fact that from the time when it was the
duty of the employes in charge of the engine of plaintiff
in error to note and act with reference to the whereabouts
of Mertes, he was moving forward, having at his left the

track upon which, according to his evidence, a Missouri Pacific freight train was moving eastward past him with all the noise incident to the moving of such a train, and with a continuous sound of its bell and whistle. On his right was the track along which, and following him, was advancing the engine to which reference has already been made. The collision is thus graphically described by Mertes in his own peculiar language: "I went on the middle of the two tracks to Sheeley's crossing. I went to go over, you know, and the engine whistled behind me, and I looked back and it caught me and throw me off." Again he said: "It throw me off the track, you know. I was pretty near off the track when it struck me." Later on in giving his testimony his examination was as follows:

Q. Was this engine which struck you making any noise, and if so, what, when it came up?

A. No, sir; it made no noise—no whistle or no bell ring. I looked back and it whistled a little.

Q. How did it whistle?

A. Toot, toot; that is all.

Q. Just as it struck you?

A. Yes, sir.

Naturally this witness could by no possibility give evidence as to what, previous to the accident, was transpiring on the engine, for of that fact the jury could derive knowledge only from the engineer, the fireman, and the pilot, three individuals, whose evidence is concurrent upon these questions. They testified that upon the engineer noticing a man walking alongside the track some distance ahead of where the engine then was, he immediately shut off steam, causing the engine's speed gradually to decrease until Mr. Mertes started to cross the track, when the engine was immediately reversed and the air brake instantly applied, which was all that could be done to suddenly stop the engine, which measures succeeded in that respect so completely that within the distance of the length of the

engine and tender they came to a complete standstill.  As
to the whistle being sounded, the evidence of these wit-
nesses differed from that of Mertes, for they say that it was
sounded by the engineer at Twenty-fourth street (the collis-
ion was at Twenty-sixth street, then known as Sheeley's
crossing), while the fireman rang the bell.  It would seem
that the testimony of Mr. Mertes as to the noise caused by
the Missouri Pacific train was given with a view to show-
ing that the sounding of the whistle and ringing of the bell
on the Union Pacific engine could not be heard or distin-
guished by Mertes on that account, and that thereby he was
excused from the imputation of contributory negligence,
which would naturally be imputable to an attempt to cross
the track in front of an engine giving such warnings.
Possibly this evidence accounted for the failure to hear
these warnings so that thereby Mr. Mertes was not liable
to the same inference of contributory negligence that might
otherwise have been imputed to him.  The Union Pacific
company's employes having sounded the whistle, rung the
bell, and shut off steam, so as to decrease speed, as soon
as they discovered that Mr. Mertes, apparently intoxi-
cated, was walking along the side of the track upon which
they were running their engine, and afterwards, when he
actually stepped upon this track, having, as we have seen,
used every available means to stop the engine as quickly
as that result could be accomplished, nothing more could
be required at their hands.  Proof of all these facts be-
ing without contradiction, there was no question of negli-
gence upon the part of the railway company to be sub-
mitted to the jury, and hence a verdict in support of which
that indispensable prerequisite is wanting cannot stand.
Let us not be misunderstood.  Negligence is a question of
fact to be determined by the jury upon the weight of the
evidence, as is any other question of fact.  When, how-
ever, there is no evidence to sustain the essential finding of
negligence as against a party sought to be charged there-

with, the court cannot sustain the verdict. There can be no preponderance of that evidence which is without existence. The judgment of the district court is

REVERSED.