John T. Hansberry, appellee, v. Chicago, Burlington & Quincy Railway Company, appellant.

Filed May 24, 1907. No. 14,746.

Railroads: Killing Cattle: Liability. Where cattle are being driven over a private crossing and are allowed to wander along the right of way of a railroad company, and one of them attempts to cross the track a short distance ahead of an approaching train, the railroad company is not liable for running down and killing such animal, unless it failed to use ordinary care to avoid the accident after discovering the animal on the track.

Appeal from the district court for Franklin county: Ed L. Adams, Judge. *Reversed.*

*J. W. Deweese, F. E. Bishop* and *F. M. Deweese,* for appellant.

*A. H. Byrum, contra.*

DUFFIE, C.

Hansberry is the owner of a tract of pasture land in Franklin county. Defendant's railroad traverses this tract from east to west. For the purpose of affording the plaintiff free access to his land on either side of the track, the railway company, in compliance with the statute of the state, has established and provided a crossing, and maintains gates on each side thereof. July 19, 1906, plaintiff directed his son, a minor 11 years of age, to drive the cattle on the north side of the track to the south side. The boy opened the gates, drove the cattle through the north gate and across the graded roadbed, and then returned to close the north gate. On account of some claimed defect or want of repair in the gate, the boy testifies that it took him about 15 minutes to close and fasten the same. In the meantime the cattle, instead of passing through the south gate, had meandered along the defendant's right of way. About this time one of defendant's passenger trains approached from the west at a high rate of speed, being from one to two hours behind its schedule time. The train struck and killed one of the plaintiff's cows which was crossing its track at the time, and this action was brought to recover its value. From a judgment in favor of the plaintiff, the defendant has appealed.

The negligence charged against the defendant is "that its employees saw said animal on said track in ample and sufficient time to have avoided, and could have avoided, the killing of said animal, but that, notwithstanding this fact, the said defendant, its agents and employees, knowingly, negligently, wilfully, and on purpose, ran its locomotive and cars upon and over said animal, kill-

ing the same, to the plaintiff's damage in the sum of $30." The only witnesses having personal knowledge of the circumstances of the killing were plaintiff's son and the engineer in charge of the train. The engineer relates the circumstances as follows: "Well, sir, it is about two miles east of Naponee, and a curve is about a mile east of Naponee, and after we got around that curve I noticed a boy on a horse. I seen his back was to me, and I whistled the crossing whistle, and the boy looked around and saw me, and turned his horse around and whipped to the south. The south gate was open, and there was a cow standing on the south side of the track about two rails east of the crossing, and I didn't see these other cattle until I got up. There was four, five, six, or maybe a dozen on the north side, probably two rails east of the crossing, and the north gate was shut. This boy put the spur to the horse, or whip, and went south. The roadmaster was on the left side, and, when I got up close to the cow, probably 150 or 200 yards, she turned her head, and I thought she was inside the fence, but saw she wasn't, and just then she turned and started to cross the track ahead of the train, and I applied the emergency air, and the train slowed down to about 15 miles an hour, and struck the cow, and I released the air and went on." He further stated that there was nothing else that could be done except to apply the emergency air, and that by all his skill as an engineer he could not have prevented striking the animal. The boy in charge of the animals testified that the cow went on the track "when they got pretty near to her." He further testified that the train slowed up, and, when asked how much, he answered: "Oh! pretty slow."

In *Union P. R. Co. v. Mertes*, 39 Neb. 448, we said: "The Union Pacific company's employees having sounded the whistle, rung the bell, and shut off steam, so as to decrease speed, as soon as they discovered that Mr. Mertes, apparently intoxicated, was walking along the

side of the track upon which they were running their
engine, and afterwards, when he actually stepped upon
this track, having, as we have seen, used every available
means to stop the engine as quickly as that result could
be accomplished, nothing more could be required at their
hands." In *Chicago, B. & Q. R. Co. v. Lilley*, 4 Neb.
(Unof.) 286, we said: "Ordinarily an engineer has a
right to presume that persons walking along the track are
in possession of their senses and will appreciate the
danger and act with discretion; and he is under no obli-
gation to stop the train, or even lessen the speed thereof,
before discovering that such person is heedless of warn-
ings given of the approach of the train, or otherwise in
imminent peril." That the rule of these opinions is
right and just is not a matter for dispute, and with much
more force should it be applied in case of an animal graz-
ing along the right of way of a railroad company, but not
actually upon the track when first seen. In *Yazoo &
M. V. R. Co. v. Wright*, 78 Miss. 125, it was said: "An
engineer need not stop his train or check his speed because
animals appear on the side of the track, and under such
circumstances, to blow his whistle will often cause the
very disaster sought to be avoided." In *Cuming v. Great
Northern R. Co.*, 108 N. W. (N. Dak.) 798, the supreme
court of North Dakota, under circumstances very similar
to those in the case at bar, reversed a judgment in favor of
the plaintiff and ordered the case dismissed. If we
accept as true the undisputed evidence offered in this case,
it conclusively appears that the cow for which damage
is claimed attempted to cross defendant's track ahead of
the approaching train and at so short a distance that it
was impossible to avoid striking her. The whistle was
blown, the bell was rung, the emergency air was applied,
and every means adopted to avoid the injury. The plain-
tiff's own evidence tends strongly to prove that the de-
fendant and its employees were wholly without fault.
The district court should have directed a verdict for the
defendant.

We recommend a reversal of the judgment.

EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment is reversed and the cause remanded.

REVERSED.